**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
 -------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, AND
NORTHBROOK INDEMNITY COMPANY,

       Plaintiffs,

     - against –

IRAGE YEHUDIAN, M.D., PADOVA
PHYSICAL REHABILITATION MEDICINE,
P.C. and PROGRESSIVE REHABILITATION
FACILITY, P.C.,

       Defendants.
-------------------------------------------------------------------X

          **REPORT AND**
         <u>**RECOMMENDATION**</u>

     CV 14-4826 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.  <u>P<small>RELIMINARY</small> S<small>TATEMENT</small></u>

   Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty

Insurance Company, and Northbrook Indemnity Company (collectively, "Plaintiffs" or

"Allstate") brought this action to recover damages arising from an alleged fraudulent healthcare

billing scheme purportedly orchestrated by the defendants in violation of state and federal law.

*See generally* Complaint ("Compl.") [DE 1].  Plaintiffs have moved for default judgment against

the three remaining defendants out of the 13 original defendants, namely, Irage Yehudian, M.D.,

Padova Physical Rehabilitation Medicine, P.C. ("Padova"), and Progressive Rehabilitation

Facility, P.C. ("Progressive").  *See* DE 84, 90.  Judge Seybert referred the plaintiffs' motion to

the undersigned for a Report and Recommendation "on whether the pending motion should be

granted and, if necessary, to determine the appropriate amount of damages, costs and/or fees to

be awarded."  *See* DE 85, 90.  For the reasons which follow, the Court respectfully recommends

to Judge Seybert that Plaintiffs' motion be GRANTED, in part, and DENIED, in part, against the three defendants and that final judgment be entered against the defendants in accordance with this Report and Recommendation.

## II.   BACKGROUND

### A.   The Complaint

The following facts are taken from the Complaint, filed on August 14, 2014, and are assumed to be true for purposes of this motion.  Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Northbrook Indemnity Company are corporations organized and existing under the laws of the State of Illinois, with principal places of business in Northbrook, Illinois.  Compl. ¶ 12.  Plaintiffs underwrite automobile insurance in New York.  *Id*. ¶ 49.  They initially commenced this suit against a group of licensed medical professionals for hire, Pepito Santos, Jr., P.T., Steven Klein, D.C., Samuel Theagene, M.D., and Irage Yehudian, M.D., a non-physician, Giovanni Lopez, professional service corporations, Harmonic Physical Therapy, P.C., Peak Chiropractic, P.C., Empire State Pain & Neuro, P.C., Padova Physical Rehabilitation Medicine, P.C., Progressive Rehabilitation Facility, P.C. and Platinum Health Physical Therapy, P.C., and a management entity, Global Health Developers & Management, Inc. ("Global Health").  *Id*. ¶ 1.  Plaintiffs allege that the defendants conspired to implement a healthcare billing fraud scheme seeking no-fault insurance benefit payments from Plaintiffs in violation of state and federal law.  *Id*.

#### 1.   *Applicable No-Fault Laws and Licensing Statutes*

Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq*.) and the regulations promulgated pursuant to the Act (11 N.Y.C.R.R. § 65, *et seq*.), automobile insurers like Plaintiffs are required to provide Personal Injury Protection

Benefits ("no-fault benefits") to their claimants. *Id*. ¶ 51. "Under the New York No-Fault Law, individuals are entitled to be compensated for 'basic economic loss' resulting from injuries caused by the operation of a motor vehicle." *Id*. ¶ 52. A claimant may recover up to $50,000 in no-fault benefits for "necessary health care goods and services." *Id*. ¶ 54. A claimant can assign his or her no-fault benefits to health care service providers, who directly bill the insurance company for the medical services rendered. *Id*. ¶ 55. Medical care providers submit claims to insurers by using the claim form required by the New York State Department of Insurance — the "Verification of Treatment by Attending Physician or Other Provider of Health Service" ("NF-3 form"). *Id*. ¶ 56. Under New York law, NF-3s must be verified by the health care provider subject to the following warning: 'Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.'" *Id*. ¶ 57. NF-3 forms certify that "the provider's request for payment is not materially false, misleading, or fraudulent." *Id*. ¶ 58. In this regard, Plaintiffs state that "[i]t is a material misrepresentation to submit NF-3 forms for treatment, testing, and other services that: (a) are never provided; or (b) are billed as expensive/complex procedures when, in reality, a less complex and less expensive service was actually provided." *Id*. ¶ 60.

Medical care providers are not eligible for no-fault reimbursement under N.Y. Ins. Law Section 5101 "if they fail to meet any New York State or local licensing requirement necessary to perform such service in New York." *Id*. ¶ 81. Under New York law, only licensed physicians may: "(a) practice medicine; (b) own and control a professional service corporation authorized to practice medicine; (c) employ and supervise other physicians; and (d) derive—absent statutory

3

exceptions not applicable in this case—economic benefit from physician services." *Id*. ¶ 61. Moreover, New York Business Corporation Law ("New York BCL") prohibits professional service corporations from rendering professional services through individuals not authorized by law to render such services [*Id*. ¶ 64 (citing New York Business Corporation Law § 1504)], and transferring control to individuals who are not authorized by law to practice the profession [*Id*. ¶ 65 (citing New York Business Corporation Law § 1507)]. The New York BCL further provides that "no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession that such corporation is authorized to practice." *Id*. ¶ 66. Further, "[u]nder New York Education Law § 6530(19), it is professional misconduct for a licensed physician to permit any person to share in the fees for professional services, other than a partner, employee, associate of a professional firm or corporation, professional subcontractor or consultant authorized to practice medicine, or a legally authorized trainee practicing under the supervision of a licensee." *Id*. ¶ 67. New York Education Law provides that it is professional misconduct for a licensed physician to "(a) practice the profession fraudulently, (b) order excessive tests or treatments not warranted by the condition of the patient, and (c) fail to maintain a record for each patient that accurately reflects the evaluation and treatment of the patient." *Id*. ¶ 69. Plaintiffs add that according to New York law, fraudulently incorporated corporations rendering professional health care services are not entitled to no-fault reimbursement, and insurers are not precluded from seeking affirmative recovery against such corporations. *Id*. ¶ 70-72 (citing *State Farm v. Mallela*, 4 N.Y.3d 313 (2005); *Metroscan Imaging, P.C. v. GEICO*, 823 N.Y.S.2d 818, 821-822 (N.Y. 2006)).

4

### 2. *Application to the Remaining Defendants*

Plaintiffs allege in the Complaint that the professional services corporation defendants ("PC Defendants") are not eligible for no-fault reimbursement from Plaintiffs because even though the medical professional defendants ("M.D. Defendants") represented themselves as the sole officer, director, and shareholder of the respective PC Defendants, the PC Defendants were, in fact, controlled by a non-physician, Defendant Lopez, in violation of New York law. *Id*. ¶ 86-87. The PC Defendants, which had been fraudulently incorporated and operated, were used as "conduits to collect No-Fault benefits for health care services purportedly rendered through the PC Defendants." *Id*. ¶ 87. Plaintiffs further contend that in connection with those health care services, Defendants submitted false and fraudulent treatment records and invoices for the purpose of inflating the charges submitted to Plaintiffs. *Id*. ¶ 82. To do so, Plaintiffs claim that Defendants ordered a "pre-determined protocol of medical services" for their patients without regard to those patients' unique circumstances, causing them to be subjected to excessive and unnecessary diagnostic testing and studies. *Id*. ¶ 203. Plaintiffs further aver that Defendants billed for services not rendered as represented. *See generally* Compl. The specifics of Plaintiffs allegations are set forth in greater detail later in this Report and Recommendation.

The Complaint initially set forth 22 Causes of Action against the Defendants for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. Section 1962(c) and (d)), common law fraud, unjust enrichment, and declaratory relief. *See generally id*. Plaintiffs are looking to recoup $6,328,642.24 in no-fault insurance benefits which were paid to the defendants. *Id*. ¶ 3. Of the 13 original defendants named in the Complaint, only three remain. These three are Dr. Irage Yehudian and the two professional services corporations, Padova and Progressive, of which Yehudian is listed as the sole officer, director

and shareholder ("Defendants" or the "Yehudian Defendants"). *Id*. ¶¶ 147, 164. These defendants are the subject of the instant motion.

### B.    Relevant Procedural History

Plaintiffs commenced this action on August 14, 2014 and thereafter served the defaulting defendants with copies of the Summons and Complaint. DE 14, 17, 21. On September 12, 2014, Attorney Lawrence F. Koback of Kern, Augustine, Conroy & Schoppman, P.C., filed a Notice of Appearance on behalf of the Yehudian Defendants. DE 28. On March 30, 2015, Attorney Kobak filed a letter motion, pursuant to Local Civil Rule 1.4, seeking to withdraw as counsel of record for these parties. DE 51. Following a hearing, Judge Seybert granted the motion and Attorney Kobak and the law firm Kern, Augustine, Conroy & Schoppman, P.C. were relieved as counsel of record for the Yehudian Defendants. DE 59. Judge Seybert gave the Defendants 30 days to retain new counsel and warned them that if they failed to do so, Plaintiffs would have the opportunity to move for default judgment against them. *Id*. The Yehudian Defendants failed to retain counsel and failed to participate further in this action.

On July 14, 2015, Plaintiffs filed a stipulation dismissing, with prejudice, all claims against defendants Samuel Theagene, M.D. and Empire State Pain & Neuro, P.C., without costs to any party. DE 70. Judge Seybert "so-ordered" the stipulation on July 20, 2015. DE 71. A second stipulation [DE 73] was filed on July 27, 2015. The stipulation was "so-ordered" on October 8, 2015 and Judge Seybert dismissed, with prejudice, and without costs to any party, all claims against Defendants Lopez, Global Health Developers & Management, Inc., Pepito Santos, Jr., P.T., Harmonic Physical Therapy, P.C., Platinum Health Physical Therapy, P.C., Steven Klein, D.C., and Peak Chiropractic, P.C. DE 74.

This Court issued a *sua sponte* Report and Recommendation on February 25, 2016 recommending to Judge Seybert that she:  (1) strike the Defendants' answers [DE 29-DE 31], (2) order the Clerk of the Court to enter a certificate of default against the Defendants, and (3) permit Plaintiffs to move for a default judgment within 45 days of the adoption of the Report and Recommendation.  February 25, 2016 Report and Recommendation ("February 25, 2016 R&R") [DE 77] at 9.  Counsel for Plaintiffs were directed to serve a copy of the Report and Recommendation on the Yehudian Defendants by overnight mail and first-class mail and to file proof of such service on ECF.  *Id*.  On March 2, 2016, Plaintiffs filed an Affidavit of Service on ECF confirming that the Yehudian Defendants were served in accordance with the Court's directive.  DE 79.

On August 2, 2016, Judge Seybert issued an Order adopting this Court's February 25, 2016 Report and Recommendation and the Yehudian Defendants' Answers were stricken. DE 80.  The Court further ordered that Plaintiffs were permitted to move for a default judgment within 45 days.  *Id*.  On August 3, 2016, the Clerk of the Court noted the defaults of the Yehudian Defendants in the record.  DE 81.  The Plaintiffs filed their motion for default judgment on September 16, 2016.  DE 84.  Judge Seybert referred the motion for default judgment to this Court for a Report and Recommendation on January 12, 2017 as to whether the motion should be granted and, if necessary, to determine the appropriate amount of damages, costs and/or fees to be awarded.  DE 85.

This Court issued a second Report and Recommendation on August 23, 2017, pointing out that Plaintiffs were seeking default judgment against the defendants only with respect to Counts VII-X, XV-XVI, and XX-XXI, and not with respect to Counts XIII and XIV.  DE 86 at 10.  However, because Plaintiffs did not address this issue in their motion, the Court could not

state with any certainty that this was the Plaintiffs' intention. *Id.* The Court then recommended that if the intention was to withdraw Counts XIII and XIV, then Plaintiffs be directed to file a Stipulation confirming the same. *Id.* With regard to damages, the Court recommended that Plaintiffs be directed to provide a list of the no-fault payments they are seeking to recover in an excel spreadsheet, contained either on a CD or some other device, so that the Court could independently review the sum total of the entries in an effort to confirm the accuracy of Plaintiffs' calculations. *Id.* at 12. The Court also requested that Plaintiffs confirm they are not seeking to recover attorney's fees and costs through their motion for default judgment. *Id.* Based on these factors, the Court recommended to Judge Seybert that (1) Plaintiffs' Motion for Default Judgment be temporarily denied, without prejudice, and with the right to renew, and (2) the issue of Plaintiffs' damages be deferred until the additional information requested above was provided. DE 86.

Plaintiffs filed a response to the Court's Report and Recommendation on September 9, 2017. DE 88. In that response, they explained that they are "**<u>not</u>** seeking default judgment and entry of final judgment against the defendants with respect to Counts XIII and XIV, which allege violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), respectively, arising from the defendants' participation in the operation and management of Global Health. *Id.* at 2. They are, however, seeking default judgment on the following counts: Counts VII, VIII, IX, X, XV, XVI, XX and XXI. *Id.* at 2-3. Plaintiffs also confirmed that they are not seeking to recover attorney's fees and costs, or any other costs and disbursements. *Id.* at 3. Under separate cover, Plaintiffs provided the Court with a CD of excel spreadsheets listing the no-fault benefits paid to Padova and Progressive. *Id.*; DE 91. Plaintiffs also filed a stipulation, which Judge Seybert "so-ordered," formally withdrawing Counts XIII and XIV of their Complaint. DE 94. The Court's

August 23, 2017 Report and Recommendation, the Plaintiffs' response to the Report and Recommendation, and the stipulation were all served on the Defendants.  *See* Ex. C, DE 92.

On September 13, 2017, Judge Seybert adopted this Court's August 23, 2017 Report and Recommendation.  DE 90.  Judge Seybert construed Plaintiffs' response [DE 88] as a motion to renew their motion for default judgment and referred that submission to this Court for a further Report and Recommendation as to whether Plaintiffs' motion should be granted, and, if necessary, to determine the appropriate amount of damages, costs, and/or fees to be awarded.  *Id*. Plaintiffs served a copy of Judge Seybert's Order adopting the August 23, 2017 Report and Recommendation on the Yehudian Defendants.  DE 93.

## III.   LEGAL STANDARD

### A.    Fed. R. Civ. P. 16(f) and 37(b)

Pursuant to Federal Rules of Civil Procedure 16(f) and 37(b), "[a] court may impose a range of sanctions on a party which fails to appear at conferences or to comply with scheduling and other pretrial orders including, among other things, striking pleadings and rendering a default judgment."  *Trustees of the Paper Products, Miscellaneous Chauffers, Warehousemen & Helpers Union Local 27 Welfare Trust Fund & Pension Fund v. J & J Int'l Logistics, Corp.*, No. 12-CV- 1475, 2013 WL 5532710, at *2 (E.D.N.Y. Oct. 4, 2013) (citing Fed. R. Civ. P. 16(1)(A)-(C); 37(b)(2)(A)(vi)); *see, e.g.*, *Koch v. Rodenstock*, No. 06-CV-6586, 2010 WL 2010892, at *6 (S.D.N.Y. Apr. 23, 2010) *report and recommendation adopted*, 2010 WL 2010900 (S.D.N.Y. May 18, 2010) (same).  "Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed."  *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-0976, 2012 WL 4442625, at *3 (E.D.N.Y. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4447619 (E.D.N.Y. Sept. 25, 2012) (citing *2W Product Corp. v. Y & P*

9

*Wholesale, Inc. et al.*, 2009 WL 29311, at *3 (E.D.N.Y. Jan. 5, 2009)).  "The court may enter a default judgment when the disobedient party has failed to comply with a court order due to willfulness, bad faith, or any fault, including gross negligence."  *Trustees of the Paper Products*, 2013 WL 5532710, at *2 (citing *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994); *Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)); *287 Franklin Ave.*, 2012 WL 4442625, at *3.  "Among the factors to be considered when imposing sanctions are: (1) the party's history of noncompliance; (2) the effectiveness of lesser sanctions; (3) whether a warning had been issued regarding imposition of sanctions; and (4) whether imposing lesser sanctions would prejudice the moving party."  *Trustees of the Paper Products*, 2013 WL 5532710, at *2 (citing *2W Prod. Corp.*, 2009 WL 29311, at *3); *287 Franklin Ave.*, 2012 WL 4442625, at *3 (same).  Moreover, where corporate defendants have been ordered to retain counsel and fail to do so, a sanction in the form of striking those defendants' Answers is appropriate.  *See Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (quoting *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975)) ("It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, F[ed]. R. Civ. P."); *Glob. Auto, Inc. v. Hitrinov*, No. 13-CV-2479, 2015 WL 5793383, at *7 (E.D.N.Y. Sept. 30, 2015) (quoting *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305 (2d Cir.1991); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir. 1986)) ("Since a corporation's failure to retain counsel results in a failure to "otherwise defend," it is appropriate to enter a default against a corporation which has failed to comply with a court order to retain counsel.").

The Court previously conducted an analysis in this case under the aforementioned rules in its February 25, 2016 *sua sponte* Report and Recommendation [DE 77], which Judge Seybert adopted in its entirety [DE 80].  In the interest of judicial economy, the Court will not reiterate that discussion here and instead respectfully refers the parties to that earlier Report and Recommendation.  Based on the Yehudian Defendants' failure to participate in litigation and to comply with Court Orders, the Court recommended to Judge Seybert that the Court (1) strike the Yehudian defendants' answers [DE 29-DE 31], (2) order the Clerk of Court to enter a certificate of default against these defendants, and (3) permit Plaintiffs to move for a default judgment within 45 days of the adoption of this Report and Recommendation.  *See generally id*; *see Gissinger v. Yung*, No. 04-0534, 2006 WL 1329697, at *5 (E.D.N.Y. May 16, 2006) (adopting the magistrate judge's recommendation that (1) the defendant's Answer be stricken, (2) the Clerk enter a notation of default the defendant and (3) the plaintiffs be given the opportunity to then move for a default judgment under Fed. R. Civ. P. 55(b)(2)).  Judge Seybert adopted the Report and Recommendation in its entirety.  DE 80.  Since it has already been determined that default is a reasonable sanction under Rule 37, the Court will now consider whether entry of a default judgment under Rule 55 is warranted.

**B.    Fed. R. Civ. P. 55**

Fed. R. Civ. P. 55 establishes a two-step process for obtaining a judgment against a defaulting party.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  First, a plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. 55(a).  Second, upon obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule

11

55(b)." *New York*, 420 F.3d at 104.  The decision to grant a motion for default judgment is left to the sound discretion of the district court.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)) ("Rule 55(b) commits this decision to the sound discretion of the district court."); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.") (internal quotation marks omitted).

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to Go, Inc.*, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp*., No. 06-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC*, No. 12-5986, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc*., 973 F.2d at 158).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014)); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y.1993)).  Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see Said v. SBS Elecs., Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading*."), adopted as modified on unrelated grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010 ).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." *Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96).  "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'"  *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring*

*Experts, Inc.*, No. 12-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)).

## IV.    DISCUSSION

### A.    Default Judgment

#### 1.    Willfulness

When a defendant is continually and "entirely unresponsive," the defendant's failure to respond is considered willful. *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *2). Here, after the withdrawal of Kern, Augustine, Conroy & Schoppman, P.C. as counsel, the Yehudian Defendants failed to comply with the May 12, 2015 Order of Judge Seybert directing the PC Defendants to retain counsel within 30 days or Plaintiffs would be given the opportunity to move for default judgment against them. DE 59. In light of Judge Seybert's Order, this Court set the case down for an in-person Discovery Status Conference on June 23, 2015. At the request of Plaintiffs, the Court converted the June 23 conference to a telephone conference.

Despite Judge Seybert's warning, the PC Defendants failed to retain counsel. Moreover, the Yehudian Defendants did not appear at the June 23, 2015 Discovery Status Conference. DE 67. Consequently, on July 7, 2015, this Court issued an Order to Show Cause, directing the Yehudian Defendants to appear on August 3, 2015 at 11 a.m. in Courtroom 910 and show cause why the sanction of default should not be entered against them, pursuant to Fed. R. Civ. P.

14

37(b)(2)(A)(vi) and (d)(1)(A)(ii), for their failure to comply with their discovery obligations as well as their failure to comply with the Orders of Judge Seybert and this Court.  DE 68.  The Defendants were also cautioned that if they failed to appear at the Show Cause Hearing, this Court would proceed to recommend to Judge Seybert that the sanction of default be imposed and that an inquest on damages be conducted.  *Id.*

Plaintiff's counsel served copies of the June 23, 2015 Civil Conference Minute Order and the July 7, 2015 Order to Show Cause on the Defendants by overnight mail on July 7, 2015.  DE 69.  Nonetheless, the Yehudian Defendants failed to appear at the August 3, 2015 Show Cause Hearing.  DE 75.  Copies of the August 3, 2015 Civil Conference Minute Order and the accompanying electronic entry were mailed to the Defendants by the Court on December 3, 2015.  Order of December 3, 2015.  Plaintiff also served copies of these documents on the Defendants by overnight mail.  *See* DE 76.

In addition to the above circumstances, the Yehudian Defendants have not communicated with the Court in any way and no Notice of Appearance was ever filed indicating that the PC Defendants had retained new counsel.  The Court thereafter issued the previously mentioned *sua sponte* Report and Recommendation, recommending to Judge Seybert that the Yehudian Defendants' Answers be stricken, that the Clerk of the Court enter a certificate of default and that Plaintiffs be permitted to move for a default judgment.  DE 77; *see Gissinger*, 2006 WL 1329697, at *5.  The Yehudian Defendants were served with the Report and Recommendation on February 29, 2016 [DE 79] but never filed any objections as provided for in Fed. R. Civ. P. 72.  On August 2, 2016, Judge Seybert adopted the Report and Recommendation in its entirety.  DE 80.  The Yehudian Defendants' Answers were stricken [DE 29-31] and a notation of default was

15

entered against them [DE 81].  The Yehudian Defendants were served with a copy of Judge

Seybert's Order adopting the Report and Recommendation on August 5, 2016.  DE 82.

Plaintiffs filed their motion for default judgment on September 16, 2016 and served it on

the Yehudian Defendants.  DE 84.  The Defendants never opposed the motion.  On August 23,

2017, this Court issued a Report and Recommendation regarding that motion, respectfully

recommending to Judge Seybert that the motion be temporarily denied, without prejudice, and

also that further information be requested from the Plaintiffs.  DE 86.  Although the Yehudian

Defendants were served with the Report and Recommendation [DE 87, 92], they never filed any

objections.  The Defendants were also served with Judge Seybert's September 13, 2017 Order,

adopting the Report and Recommendation [DE 93], as well as Plaintiffs' response to the Report

and Recommendation [DE 88, 92], which included the additional information the Court was

seeking.  The Yehudian Defendants have yet to communicate with the Court in any way and no

Notice of Appearance has been filed on their behalf.  Based on this record, the Court finds that

the first factor for entry of default judgment — willfulness — has been satisfied.

### 2.    *Meritorious Defense*

Turning to the next factor, the Court unable to make a determination whether the

defendants have a meritorious defense since their Answers were stricken and therefore no

defenses are presently before the Court.  Although the Defendants' default constitutes an

admission of all the factual allegations contained in the Complaint as they relate to liability,

Plaintiffs must nevertheless demonstrate that the uncontested allegations set forth valid claims.

*See Said v. SBS Electronics, Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24,

2010) (collecting cases).  Plaintiffs seek default judgment on their claims for RICO violations,

fraud and unjust enrichment.  They also seek declaratory relief.  The Court now turns to an examination of Plaintiffs' claims.

### a.    Violations of 18 U.S.C. § 1962(c)

In the Complaint, Plaintiffs allege violations of RICO Sections 1962(c) and (d).  Section 1962(c) states the following:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Under Section 1962(c), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

To recover under RICO, "a plaintiff must show '(1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation.'"  *UFCW Local 1776 v. Eli Lilly and Co*., 620 F.3d 121, 131 (2d Cir. 2010) (quoting *City of New York v. Smokes-Spirits.com, Inc*., 541 F.3d 425, 439 (2d Cir. 2008)).  This burden is satisfied when a plaintiff demonstrates "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.'"  *Allstate Ins. Co. v. Nazarov*, No. 11-6187, 2015 WL 5774459, at *10 (E.D.N.Y. Sept. 30, 2015) (quoting *Hinterberger v. Catholic Health Sys., Inc*., 536 F. App'x 14, 16 (2d Cir. 2013)) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).  The Court considers the factors below.

### i.    Individual Defendants and RICO Enterprises

RICO applies to "any person employed by or associated with any enterprise engaged in" certain acts that are prohibited by the statute.  18 U.S.C. § 1962(c).  RICO defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), and "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "[T]he alleged 'enterprise' through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity."  *Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 390 (E.D.N.Y. 2008) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994), *abrogated on other grounds, Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 159, 121 S. Ct. 2087, 2088, 150 L. Ed. 2d 198 (2001)); *Allstate Ins. Co. v. Afanasyev*, No. 12-2423, 2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016) (citing same), *report and recommendation adopted sub nom. Allstate Insurace Co. v. Afanasyev*, No. 12-2423, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016).  This requirement is satisfied by "no more than the formal legal distinction between 'person' and 'enterprise.'"  *Cedric Kushner Promotions. Ltd. v. King*, 533 U.S. 158, 165 (2001).

Here, Plaintiffs argue that Padova and Progressive constitute enterprises under RICO. *See* Memorandum of Law in Support of Motion for Default Judgment ("Pls.' Mem.") [DE 84-1] at 12.  The Court agrees.  According to the Complaint, Padova and Progressive are professional services corporations organized and existing under New York law.  Compl. ¶¶ 32, 35.  As such, they are "legal entities" as the term is used in 18 U.S.C. § 1961(4).   Plaintiffs also aver that Defendant Yehudian, a natural person, used Progressive and Padova as conduits to collect no-

fault insurance benefits. *Id.* ¶¶ 21, 22, 32, 35. These allegations satisfy the "distinctness requirement." *Palatkevich v. Choupak*, No. 12-1682, 2014 WL 1509236, at *15 (E.D.N.Y. Jan. 24, 2014) (citing *Cedric Kushner Promotions Ltd.*, 533 U.S. at 163) ("[A] natural person named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met."); *Allstate Ins. Co. v. Aminov*, No. 11-2391, 2014 WL 527834, at *5 (E.D.N.Y. Feb.7, 2014) ("Allstate has established the existence of a RICO enterprise because they have adequately described how the Retailers were used to perpetuate the fraud against Allstate."). The fact that Defendant Yehudian is named as the sole officer, director and shareholder of Padova and Progressive, notwithstanding the truthfulness of such a representation, does not defeat the distinctness element between Yehudian and the defendant enterprises. *Cedric Kushner Promotions Ltd.*, 533 U.S. at 163 (citing *United States v. Bestfoods*, 524 U.S. 51, 61–62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)) ("[L]inguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner."). Based on the above facts, the first and sixth elements of Plaintiffs' RICO claims under 18 U.S.C. Section § 1962(c) have been satisfactorily stated.

### ii.   Predicate Acts

To constitute a pattern of racketeering under RICO, a plaintiff must allege that each defendant engaged in at least two predicate acts. *Elsevier Inc. v. Memon*, 97 F. Supp. 3d 21, 30 (E.D.N.Y. 2015) (quoting *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir. 1990)); *Allstate Ins. Co. v. Afanasyev*, No. 12-2423, 2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016) (citing 18 U.S.C. § 1961(5)), *report and recommendation adopted sub nom. Allstate Insurace Co. v. Afanasyev*, No. 12-2423, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016). Here,

19

Plaintiffs allege that Defendant Yehudian engaged in mail fraud.  Compl. ¶¶ 343-348.  "A violation of the mail fraud statute, 18 U.S.C. § 1341, is a predicate act of racketeering under RICO."  *Gov't Employees Ins. Co. v. Badia*, No. 13-1720, 2015 WL 1258218, at *20 (E.D.N.Y. Mar. 18, 2015) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014)).  In order to state a claim for mail fraud, a plaintiff must allege the following:  "'(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme.'"  *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010) (citing *Chanayil v. Gulati*, 169 F.3d 168, 170–71 (2d Cir. 1999)), *aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011).  A plaintiff must also plead facts that "give rise to a strong inference of fraudulent intent."  *Chapin Home for the Aging v. McKimm*, No. 11-00667, 2012 WL 2158563, at *2 (E.D.N.Y. June 13, 2012) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)) (internal quotation marks omitted).

Pursuant to Fed. R. Civ. P. 9(b), allegations of fraud, including mail fraud, are subject to a heightened pleading standard — they must be pled with particularity.  Fed. R. Civ. P. 9(b).  "This normally requires that '[a]llegations of predicate mail and wire fraud acts ... state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.'"  *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (citing *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)); *see Kuczynski v. Ragen Corp.*, 732 F. Supp. 378, 383 (S.D.N.Y. 1989) (quoting *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420-21 (S.D.N.Y. 1978) (citing *Beres v. Thomson McKinnon Sec., Inc.*, No. 85-6674, 1989 WL 105967, slip op. at 18 (S.D.N.Y. Sept. 1,

1989)).  That being said, "[i]n complex civil RICO actions involving multiple defendants Rule 9(b) does not [ ] require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'" *Aiu Ins. Co. v. Olmecs Med. Supply, Inc*., No. 042934, 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005) (quoting *In re Sumitomo Copper*, 995 F. Supp. at 456 (internal citations omitted)) (citing *Calabrese v. CSC Holdings, Inc.*, No. 02-05171, 2003 WL 22052824, *6 (E.D.N.Y. Aug.13, 2003)) (The rationale that in complex RICO actions where the complaint alleges that "numerous mailings of particular kinds were made in furtherance of a scheme" the plaintiff need not "specifically allege each mailing" applies "with equal force" to cases in which the plaintiff alleges that the mailings themselves were "*per se* fraudulent.") (internal quotation marks omitted);  *Allstate Ins. Co. v. Nazarov*, No. 11-6187, 2015 WL 5774459, at *12 (E.D.N.Y. Sept. 30, 2015) (quoting *Gov't Employees Ins. Co. v. Hollis Med. Care, P.C*., No. 10-4341, 2011 WL 5507426, at *8 (E.D.N.Y. Nov. 9, 2011) (citing *AIU Ins. Co.*, 2005 WL 3710370, at *11; *S. Ill. Laborers' and Emp'rs Health & Welfare Fund v. Pfizer Inc*., No. 08-5175, 2009 WL 3151807, at *4 n. 10 (S.D.N.Y. Sept. 30, 2009); *Evercrete Corp. v. H–Cap. Ltd*., 429 F.Supp.2d 612, 624 (S.D.N.Y. 2006) (setting forth the pleading standard under Fed. R. Civ. P. 9(b) for fraudulent statements but then noting the *Ais Ins. Co*. holding regarding complex cases)).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

On reviewing the 104-page Complaint, the Court finds that Plaintiffs have adequately set forth a claim for mail fraud.  Plaintiffs allege that although Defendants failed to satisfy New York licensing requirements, Defendants materially misrepresented, through the submission of

NF-3 forms, that they were eligible for reimbursement of no-fault benefits for medical services rendered.  Compl. ¶¶ 149, 159, 166, 176; *see* Pls.' Mem. at 7 ("Representations regarding the ownership status of the PCs were also communicated to Allstate (through NF-3 forms) each and every time that the PCs sought payment from Allstate."); *see also Allstate Ins. Co. v. Howell*, No. 09-4660, 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013).  Plaintiffs further contend that the Defendants' conduct was intentional, and "designed to elicit payment of automobile insurance contract proceeds from Allstate to the defendants."  Compl. ¶¶ 7-8.  With regard to the medical services provided, Plaintiffs aver that the Defendants routinely ordered a "pre-determined protocol of medical services" for their patients without regard to those patients' unique circumstances, knowing that the patients would be subjected to excessive and unnecessary diagnostic testing and studies.  *Id*. ¶ 204.  Moreover, Defendants intentionally billed for services that were not rendered as represented.  *Id*. ¶ 195.  Plaintiffs allege that Defendants engaged in fraudulent treatment and electrodiagnostic ("EDX") testing that included nerve conduction velocity ("NCV") studies and needle electromyography ("EMG") tests.  *Id*. ¶¶ 195, 198, 213.  According to Plaintiffs, "[t]he defendants' overall scheme not only injured Allstate, but the specific conduct of the EDX Providers also compromised and/or endangered the well-being of the patients/assignors that they purported to treat."  *Id*. ¶ 200.

With regard to NCV studies, Plaintiffs assert that "virtually every patient treated by the EDX Providers received the following battery of EDX tests:  (a) NCV studies of at least 8 motor and sensory nerves; and (b) multiple F-Wave studies and H-Reflex tests."  *Id*. ¶ 248.  Plaintiffs further allege that "virtually every patient treated by the EDX Providers[, which includes Defendant Yehudian,] received an NCV study on the same nerves and nerve fibers."  *Id*. ¶ 243.  Citing various medical sources, Plaintiffs argue that "[e]ven if every patient treated by the EDX

Providers actually required an NCV study (which they did not), it is virtually impossible that every patient would require the same number of studies on the same specific nerves given the unique physical characteristics and conditions of each individual patient, particularly if these patients had nerve damage as alleged." *Id*. ¶ 244. Moreover, Plaintiffs explain that the number of NCV studies conducted routinely exceeded the number reasonable and necessary to evaluate a patient's condition. *Id*. ¶ 247.

Plaintiffs also maintain that Defendants overutilized F-Wave studies and H-Reflex studies. *Id*. ¶¶ 254-276. According to Plaintiffs, even if an F-Wave study is necessary, a maximum of three F-Wave studies is sufficient to diagnose radiculopathy. *Id*. ¶ 259. Plaintiffs aver, however, that "with virtually every patient that underwent a nerve conduction study, the EDX Providers conducted a minimum of four (4) F-Wave studies…regardless of the patient's complaints." *Id*. ¶ 260. Plaintiffs attached to their Complaint as Exhibit 3 an itemized table of F-wave studies which they state were fraudulently administered by Defendant Padova and are therefore not compensable under New York's no-fault laws. Compl., Ex. 3 [DE 1-5]. The table sets forth the claim number, claimant initials, date of service, CPT code, CPT description and the total amount billed. *Id*.

Plaintiffs similarly allege that Defendants overutilized H-Reflex tests. Compl. ¶ 266-276. Exhibit 4 attached to the Complaint sets forth an itemized table of H-reflex studies which Plaintiffs allege were fraudulently administered by Defendants Progressive and Padova and are therefore also not compensable under New York law. *Id*. ¶ 274; Ex. 4 [DE 1-6], annexed to Compl. The table contains the provider, claim number, claimant initials, date of service, CPT code, CPT description and total amount billed. Compl. ¶ 274.

In addition to the overutilization of NCV studies, F-Wave Studies and H-Reflex Studies, Plaintiffs allege that Defendants also engaged in fraudulent EMG testing. In "legitimate clinical settings," a medical provider's "decision concerning the extent of a particular patient's EMG test is determined based on a history and detailed neurological and physical examination of the individual patient, along with an analysis of the real time results obtained during the EMG test and the NCV study." *Id*. ¶ 277. Such individualized consideration results in a diverse range of muscles being tested from patient to patient, which was not the case here. *See id*. ¶¶ 280, 286. Here, however, the EDX providers, including Defendant Yehudian, implemented a "standard protocol pattern" to EMG testing, resulting in the "gross overuse" of these tests. *Id*. ¶ 280. According to Plaintiffs, "each of the EDX Providers' charges relative to EMG tests are fraudulent and non-compensable under New York's No-Fault law." *Id*. ¶ 288.

It is further alleged that the defendants charged Plaintiffs for services that were not rendered as represented on the NF-3 forms. In this regard, Plaintiffs state that "[v]irtually every patient treated by the EDX Providers at the Global Health-controlled facilities was subjected to an initial consultation that was billed to Allstate under CPT code 99244." *Id*. ¶ 318. According to Plaintiffs, this particular CPT code is used for consultations that require "(a) a comprehensive history; (b) a comprehensive examination; and (c) medical decision-making of moderate complexity." *Id*. ¶ 320. Such consultations also require at least two of the following components: "(a) "multiple" diagnoses or management options; (b) a moderately extensive amount and/or complexity of data to be reviewed; and (c) a moderate risk of complications and/or moderate risk of patient morbidity or mortality." *Id*. ¶ 322. Plaintiffs allege, and the Court, as required in these circumstances, accepts as true that "[n]one of the patients treated by the EDX Providers at the Global Health-controlled facilities were experiencing the type of

24

medical conditions contemplated by the CPT code 99244 descriptor at the time of their initial consultation." *Id.* ¶ 324.

In support of their claim, Plaintiffs have attached to the Complaint a table identifying all patients treated through Padova and Progressive that were billed at the CPT code 99244 level. *Id.* ¶ 325 and Ex. 5 [DE 1-7]. The table sets forth the provider, claim number, claimant initials, date of service, CPT code, CPT description and the total amount billed. Ex. 5. Plaintiffs further allege that Defendants submitted bills for follow-up examinations under CPT code 99215 that were not compensable under that code "because they failed to document the necessary criteria required to bill re-evaluations." *Id.* ¶ 336. Exhibit 6 to the Complaint contains a chart which identifies all of the patients treated by the Defendants who received follow-up examinations which were billed at the CPT code 99215 level. *Id.* ¶ 337 and Ex. 6 [DE 1-8], annexed to Compl. The exhibit also sets forth the provider, claim number, claimant initials, date of service, CPT code, CPT description and the total amount billed. *See* Ex. 6.

Plaintiffs have attached to the Complaint a table of selected examples of mail fraud in further support of their allegations. Compl., ¶ 348 and Ex. 7 [DE 1-9]. The table sets forth the following information for each mailing: claim number, initials, the date of mailing, sender, recipient, contents of the mailing, and name of the treating and the signing doctor, where applicable. *Id.* The mailings were exchanged between Plaintiffs and the PC Defendants and included explanations of benefits, NF-10 denial of benefits forms and NF-3 verification of treatment forms. Defendant Yehudian is listed as the treating and signing doctor for the NF-3 forms submitted by Padova and Progressive. Seventy (70) of these mailings involved Defendant Padova and three involved Progressive.

In addition to the documents contained in Exhibit 7, Plaintiffs allege that "[u]nless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, CPT code tally sheets, referrals, letters and request for payments in connection with the insurance claims referenced throughout [the Complaint] traveled through the U.S. Mail." *Id*. ¶ 344.  Exhibits 11 and 12 contain itemized lists of hundreds of payments made by Allstate to Padova and Progressive.  The tables set forth the payment date, payment amount, claim number and check number.  Plaintiffs explain that each insurance claim involved several mailings, including the mailing of the notice of claim, policies, insurance payments, and checks related to settlement.  *Id*. ¶ 345.  Plaintiffs "estimate[ ] that the defendants' fraudulent medical billing scheme generated hundreds of mailings."  *Id*. ¶ 348.

The Court now turns to the issue of scienter.  As set forth above, in the context of a fraud claim, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  However, a plaintiff must still set forth "some minimal factual basis" that gives rise to a "strong inference of fraudulent intent."  *Aiu Ins. Co*, 2005 WL 3710370, at *13.  Here, the Court finds that Plaintiffs have satisfied Fed. R. Civ. P. 9(b) since their Complaint "alleg[es] facts that support a motive to deceive and access to accurate information."  *See Allstate Ins. Co. v. Bogoraz*, 818 F. Supp. 2d 544, 550-51 (E.D.N.Y. 2011) ("The factual allegations adequately demonstrate defendant had motive and opportunity to commit the fraud and create a reasonable inference of the requisite intent.") (citing *Cohen v. Koenig*, 25 F.3d 1168, 1173–74 (2d Cir. 1994); *Aetna Cas. and Sur. Co. v. Aniero Concrete*, 404 F.3d 566, 579 (2d Cir. 2005); *Wight v. BankAmerica Corp*., 219 F.3d 79, 92 (2d Cir. 2000)); *but see Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 421 (E.D.N.Y. 2017) (quoting *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y*., No. 07-CV-1471,

26

2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (collecting cases)) ( "a generalized profit motive that could be imputed to any company ... has been consistently rejected as a basis for inferring fraudulent intent.") (internal quotation marks omitted).

Viewing the specific allegations contained within the body of Plaintiffs' Complaint, in combination with the information set forth in the Exhibits attached to the Complaint, the Court finds that Defendants have adequately pled the commission of two or more predicate acts. *Allstate Ins. Co. v. Afanasyev*, No. 12-2423, 2016 WL 1156769, at *9 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted sub nom. Allstate Insurace Co. v. Afanasyev*, No. 12-2423, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016) (noting that Allstate had satisfied Rule 9 where it alleged in the complaint specific instances when the defendants mailed fictitious insurance claims, and provided the Court with billing records); *Aiu Ins. Co. v. Olmecs Med. Supply, Inc*., No. CV-042934, 2005 WL 3710370, at *12 (E.D.N.Y. Feb. 22, 2005) (quoting *In re Sumitomo Copper*, 995 F. Supp. at 456 (internal citations omitted)) (citing *Calabrese v. CSC Holdings, Inc*., No. 02-05171, 2003 WL 22052824, *6 (E.D.N.Y. Aug.13, 2003)) (A plaintiff need not specify the fraud involved in each individual submission.  When the Exhibits are viewed in conjunction with the specific allegations set forth in the body of the Complaint, "the specific fraud is evident."); *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc*., No. 00-7352, 2001 WL 282687, at *3 (S.D.N.Y. Mar. 22, 2001) ("The use of mail, wire other instrumentalities of interstate commerce is also alleged and is otherwise self-evident from the face of the Complaint. Rule 9(b) requires no more of Sterling at this stage of the litigation.").

The Court's finding is consistent with that of other courts within this District which have considered similar allegations of mail fraud.  *See e.g., Allstate Ins. Co. v. Nazarov,* No. 11-6187, 2015 WL 5774459, at *13 (E.D.N.Y. Sept. 30, 2015); *Allstate Ins. Co. v. Aminov*, No. 11-2391,

2014 WL 527834, at *5 (E.D.N.Y. Feb. 7, 2014); *Allstate Ins. Co. v. Howell*, No. 09-4660, 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) ("Each time the defendants submitted a false claim under the guise of being properly licensed medical providers, the plaintiffs understandably relied upon the representations. The defendants' numerous mailings of fraudulent insurance claims to Allstate in connection with the scheme thus constitute the predicate acts of racketeering activity that establish a violation of Section 1962(a)."); *Gov't Employees Ins. Co. v. Hollis Med. Care, P.C.*, No. 10-4341, 2011 WL 5507426, at *8 (E.D.N.Y. Nov. 9, 2011) (determining that the plaintiff insurance company satisfied Rule 9(b) where the complaint "describe[d] the specific circumstances constituting the overall fraudulent scheme in detail, and it include[d] an exhibit of samples of a number of the fraudulent submissions mailed or caused to be mailed by the management defendants on specific dates and times."); *Allstate Ins. Co. v. Bogoraz*, 818 F. Supp. 2d 544, 551 (E.D.N.Y. 2011) (Allstate successfully pled a claim for mail fraud where it alleged that (1) "defendant entered into an agreement to share the no-fault benefits earned by the professional services corporation with [ ] an attorney," (2) "defendant 'intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims,'" (3) "the mailings sought and received payment of no-fault benefits as a licensed professional services corporation" and (4) "defendant intentionally misrepresented that Sharp Radiology was legally incorporated as a medical professional services corporation"); *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 265 (E.D.N.Y. 2011)(On a motion to dismiss, the court explained that the plaintiff provided exhibits setting forth selected examples of dates when NF-3 forms were sent to the plaintiff and payments the plaintiff made to the PC defendants, and although such charts are not necessary to adequately plead a RICO claim for mail fraud, "they

28

provide an additional layer of particularity that support the sufficiency" of the Complaint under Fed. R. Civ. P. 9(b)").

### iii.   **Pattern of Racketeering**

To constitute a "pattern," the predicate acts must have been committed within 10 years of each other, and they must be 'related and [either] amount to or pose a threat of continuing criminal activity.'"  *Allstate Insurance Company v. Abutova*, No. 13-3494, 2017 WL 1185222, at *5 (E.D.N.Y. Feb. 15, 2017) (quoting *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)) (citing 18 U.S.C. § 1961(5)), *report and recommendation adopted*, No. 13-3494, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017); *see Afanasyev*, 2016 WL 1156769 (citing same); *see also* Pls.' Mem. at 12.  According to the Supreme Court, a threat of continuing criminal activity may be established by showing "open-ended continuity" or "close-ended continuity."  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989) (*Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (CA3 1987)); *Pieper v. Benerin, LLC*, 972 F. Supp. 2d 321, 331 (E.D.N.Y. 2013).  "Open-ended continuity exists where a defendant's 'predicate acts represent an ongoing way of conducting [the defendant's] business.'"  *Pieper*, 972 F. Supp. 2d at 331 (quoting *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 406 (S.D.N.Y. 2013)).  "At a minimum, [ ] it is clear that a 'threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes' or where 'the predicates are a regular way of ... conducting or participating in an ongoing and legitimate RICO enterprise.'"  *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 369 (E.D.N.Y. 2012) (quoting *H.J.*, 492 U.S. at 242-43).  To establish, "close-ended continuity," a plaintiff must allege "a series of related predicates extending over a substantial period of time."  *MAVL*

*Capital, Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726, 732 (E.D.N.Y. 2015)

(quoting *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001)).  "A substantial period of time

means more than a 'few weeks or months.'"  *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*,

No. 04 CV 4631 (CBA), 2006 WL 6176152, at *16 (E.D.N.Y. Mar. 16, 2006) (*H.J. Inc. v. Nw.

Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)).  "Since the Supreme Court decided *H.J. Inc.* [*v.*

*Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)], [the

Second Circuit] has never held a period of less than two years to constitute a 'substantial period

of time.'"  *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (collecting cases).

The Court finds that Plaintiffs have met their burden here.  *See* Pls.' Mem. at 12-13.  As

noted above, Exhibit 7 to Plaintiffs' Complaint sets forth the details of selected examples of mail

fraud.  Three of those mailings involved Padova.  On August 3, 2006, Progressive sent Plaintiff

an NF-3 form, signed by Defendant Yehudian, which precipitated the mailing of an Explanation

of Benefits Form, and, subsequently, an NF-10 Denial of Benefits Form by Plaintiff.  The 70

mailings involving Progressive spanned the period from 2006 to 2010 and also included NF-3

Forms, Explanation of Benefit Forms and NF-10 Denial of Benefits Forms.  Plaintiffs also

provide an itemized chart of payments they made in connection with the fraudulent claims

submitted by Padova and Progressive.  *See* Compl., Exs. 11, 12.  The payments made to Padova,

as shown in Exhibit 11, run from 2006 through 2013 and amount to $1,442,469.15.[1]  *See* Exhibit 11; *see also* Declaration of Michael Bruno in Support of Motion for Default Judgment ("Bruno Decl.") [DE 84-2] ¶ 52.  Exhibit 12 shows payments made to Progressive, beginning in 2002 and continuing into 2014.  These amount to $460,360.88.[2]  *See* Compl., Ex. 12; *see also* Bruno Decl. ¶ 53.  Plaintiffs allege that requests for payments in connection with the insurance claims traveled through the U.S. Mail.  Compl. ¶¶ 344-44.  Plaintiffs "estimate[ ] that the defendants' fraudulent medical billing scheme generated hundreds of mailings."  *Id*. ¶ 348.  Moreover, Plaintiffs claim that Padova and Progressive continue to submit insurance claims demanding

---

[1]     Below is a chart setting forth the number of payments made to Padova for each respective year:

| | |
|------|------|
| 2006 | 625 |
| 2007 | 772 |
| 2008 | 1407 |
| 2009 | 594 |
| 2010 | 145 |
| 2011 | 88 |
| 2013 | 38 |

[2]     Below is a chart setting forth the number of payments made to Progressive for each year:

| | |
|------|------|
| 2002 | 87 |
| 2003 | 546 |
| 2004 | 76 |
| 2005 | 21 |
| 2006 | 25 |
| 2007 | 19 |
| 2008 | 7 |
| 2009 | 35 |
| 2010 | 26 |
| 2011 | 10 |
| 2012 | 0 |
| 2013 | 0 |
| 2014 | 2 |

payment and continue to challenge Plaintiffs' denial of prior claims. *Id*. ¶¶ 604, 614. Defendant Yehudian's conduct has been neither isolated nor sporadic. He has, according to the Plaintiffs, fraudulently incorporated and operated Padova and Progressive as part of a pervasive fraudulent scheme to seek no-fault insurance benefits. In conjunction with that scheme, Yehudian repeatedly committed acts of mail fraud over a period spanning more than two years. In light of this record, the Court concludes that Plaintiffs have adequately stated a pattern of racketeering with respect to both Padova and Progressive. *See Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc*., 17 F. Supp. 3d 207, 227 (E.D.N.Y. 2014); *see Lyons*, 843 F. Supp. 2d 358, 369–70 (E.D.N.Y. 2012) (in determining that the plaintiff properly alleged open-ended continuity, the court explained that "[i]n light of the Complaint's allegations of fraudulent incorporation and of the very numerous and regular inflated billings, it is reasonable to infer that the PCs operated by defendants existed for criminal purposes. And for the same reasons…it would be reasonable to infer that defendants' acts of mail fraud constituted a regular way of conducting the affairs of those businesses."); *Hollis Med. Care, P.C*., 2011 WL 5507426, at *9 (determining that the plaintiff established the existence of a pattern of racketeering where it alleged that "the management defendants submitted or caused to be submitted via the mail over 46,000 separate fraudulent claims to it over a six year period beginning as early as July 2004. [ ] It further allege[d] that the predicate acts of mail fraud 'are essential in order for Hollis to function.'"); *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 04-4631, 2006 WL 6176152, at *16 (E.D.N.Y. Mar. 16, 2006) ("plaintiff has adequately alleged open-ended continuity, alleging 1,256 separate fraudulent claims submitted over a four-year period, that are continuing to today in that defendants are seeking to collect additional amounts on claims submitted but not yet paid").

### iv.   <u>Participation</u>

"[A]t the pleading stage, the participation element is a 'relatively low hurdle for plaintiffs to clear[.]'" *Abutova*, 2017 WL 1185222, at *6 (E.D.N.Y. Feb. 15, 2017) (citing *Nazarov*, 2015 WL 5774459, at *13 (internal quotations and citations omitted)).  "This requirement is satisfied if the defendant participated in the operation or management of the enterprise, which the Second Circuit has described as a 'relatively low hurdle for plaintiffs to clear, especially at the pleading stage.'"  *Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*, No. 13-4966, 2015 WL 5692875, at *6 (E.D.N.Y. Sept. 4, 2015) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *report and recommendation adopted sub nom. Gov't Employees Ins. Co. v. Zemlyansky*, No. 13-4966, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015). According to the Complaint, Defendant Yehudian was listed with the Department of Education as the sole officer, director and shareholder of Defendants Padova and Progressive.  Compl. ¶¶ 147, 164.  Moreover, Plaintiffs allege that Defendant Yehudian conducted EDX testing, NCV studies and EMG studies on patients treated at Padova and Progressive, and was also responsible for submitting claims for which services were not rendered as reported.  *See id*. ¶¶ 204, 280, 303; see Pls.' Mem. at 15.  The purpose this fraudulent scheme was to inflate the patient charges submitted to Plaintiffs.  *See Compl*. ¶¶ 195, 250, 330.  The Court finds that Plaintiffs have adequately alleged the participation of Defendant Yehudian in the enterprises.

### v.   <u>Interstate Commerce</u>

Lastly, under RICO, "defendant's racketeering acts must constitute participation in the affairs of an enterprise involved in *interstate commerce*."  *Gov't Employees Ins. Co. v. Scheer*, No. 13-04039, 2014 WL 4966150, at *5 (E.D.N.Y. Aug. 18, 2014) (emphasis added), *report and recommendation adopted*, No. 13-4039, 2014 WL 4966137 (E.D.N.Y. Sept. 30, 2014).  "RICO

plaintiffs need only show 'a minimal effect on interstate commerce.'"  *Nazarov*, 2015 WL 5774459, at *14 (quoting *DeFalco*, 244 F.3d at 309) (citing *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 230 (E.D.N.Y. 2009).  Here, Plaintiffs allege that Defendant Yehudian, a resident and citizen of New York, in conjunction with New York professional service corporations, Padova and Progressive, submitted fraudulent claims to Plaintiffs, a national insurance company organized and existing under the laws of Illinois, and with principal places of business in Northbrook, Illinois.  These allegations satisfy the "interstate commerce" component of the statute.  *See Nazarov*, 2015 WL 5774459, at *14.

### b.    Violations of 18 U.S.C. § 1962(d)

Plaintiffs allege that Defendant Yehudian and former Defendants Lopez and Global Health conspired to violate 18 U.S.C. Section 1962(c) through the operation of Progressive and Padova.  Compl., Counts VIII, X.  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate ... the provisions of subsection ... (c)."  According to applicable case law in the Second Circuit, "[h]aving established the existence of a RICO enterprise, a plaintiff alleging a conspiracy need only prove in addition that the defendants 'know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles.'"  *Gov't Employees Ins. Co. v. Simakovsky*, No. 14 CIV. 3775, 2015 WL 5821407, at *7 (E.D.N.Y. Oct. 5, 2015) (quoting *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F.Supp.2d 64, 89 (E.D.N.Y. 2011)); *First Capital Asset Mgmt., Inc.*, 385 F.3d at 178 (quoting *Baisch v. Gallina*, 346 F.3d at 376–77 (2d Cir.2003)) ("A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [she has adopted] the goal of furthering or facilitating the criminal endeavor.'") (internal quotation marks omitted). The heightened pleadings requirements of Fed. R. Civ. P. 9(b) do not apply to claims of RICO

conspiracy. *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)) ("But Rule 9(b), notably, does not govern allegations of § 349 violations, extortion, and RICO conspiracy, which are subject only to the more liberal notice-pleading requirements of Rule 8.").

As the Court has already held here, Plaintiffs have alleged a substantive RICO violation with sufficient particularity. With respect to the agreements between the Defendants, Plaintiffs state that "to circumvent New York law and to induce the Department of Education to issue a certificate of authority authorizing Padova [and Progressive]" to be organized as [ ] physician-owned professional service corporation[s]," "Lopez recruited Santos, Klein, Theagene, and Yehudian, and conspired to have Santos, Klein, Theagene, and Yehudian act as sole officer, director, and shareholder of the respective PC Defendants." *See id*. ¶¶ 83, 86, 149, 166. Plaintiffs further allege that Defendant Yehudian, and Lopez and Global Health, conspired to violate 18 U.S.C. Section 1962(c) by agreeing to conduct the affairs of Padova and Progressive through a pattern of racketeering, which included the submission of fraudulent insurance claims through the U.S. mail. *Id*. ¶¶ 475, 500. Plaintiffs allege that the purpose of the conspiracy was to induce Plaintiffs to make no-fault insurance payments to Defendants, payments to which Defendants would otherwise not be entitled. *See id*. ¶¶ 476, 501. According to the Complaint, Defendant Yehudian, Lopez and Global Health "were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions." *Id*. ¶¶ 477, 502. The Court finds that Plaintiffs' allegations, in conjunction with the Exhibits attached to the Complaint, adequately set forth a claim under 18 U.S.C. Section 1962(c). *See Allstate Ins. Co. v. Smirnov*, No. 12- 1246, 2014 WL 4437287, at *7 (E.D.N.Y. July 21, 2014) (finding that the plaintiffs

adequately pled a claim for conspiracy when "[t]he undisputed evidence presented by plaintiffs [ ] demonstrates that defendants participated together in perpetrating a fraudulent scheme: they sought reimbursement for treatment that was not medically necessary, and by seeking reimbursement they attested, at least implicitly, that their medical clinics were owned and operated by licensed physicians when in fact they were not."), *report and recommendation adopted*, No. 12-01246, 2014 WL 4437291 (E.D.N.Y. Sept. 8, 2014).

### c. Fraud

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Afanasyev*, 2016 WL 1156769, at *10 (quoting *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015)) (internal quotation marks omitted). As set forth in connection with Plaintiffs' RICO claim, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiffs allege that the defendants submitted claims for services that were, in essence, unnecessary or not rendered as represented. *See generally Compl*. ¶¶ 61, 195, 234, 271, 277, 305; *see* Pls.' Mem. at 19. As detailed above, Plaintiffs provide detailed descriptions of the manner in which the defendants' representations to Plaintiffs were fraudulent. As to the medical services provided, Plaintiffs assert that the defendants routinely ordered a "pre-determined protocol of medical services" for their patients without regard to those patients' unique circumstances, knowing that the patients would be subjected to excessive and unnecessary diagnostic testing and studies. *Id*. ¶ 204. Moreover, Plaintiffs aver that Defendants intentionally billed for services that were not rendered as represented. *Id*. ¶ 195. Just as Plaintiffs satisfied the

pleading requirements of Fed. R. Civ. P. 9(b) with respect to their claim for mail fraud under RICO, the Court finds that Plaintiff's allegations satisfy "the material misrepresentation element of a New York common law fraud claim." *See Abutova*, 2017 WL 1185222, *7 (quoting *Nazarov*, 2015 WL 5774459, at *15). Moreover, the Court finds that Plaintiffs have adequately alleged an intent to defraud. "Intent to defraud is established where…'it is clear that a scheme, viewed broadly, is necessarily going to injure.'" *Id.* at *7 (*AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 220-21 (2d Cir. 2000)). Here, the Complaint alleges that Defendants devised a scheme to induce Plaintiffs, through the submission of fraudulent claims to make no-fault health insurance payments to the defendants. *See* Pls.' Mem. at 20. This satisfies the third prong of the standard set forth in *Financial Guar Ins. Co*. Compl. ¶ 355.

With regard to the two remaining elements, (4) reasonable reliance and (5) injury, the Court finds that Plaintiffs have satisfied them as well. Plaintiffs allege that each claim submitted to them was verified pursuant to Insurance Law Section 403. *Id.* ¶ 367. Moreover, Defendants concealed the truth from Plaintiffs regarding the unlawful fee splitting and the false medical documentation. *Id.* ¶¶ 367-369. Plaintiffs maintain that their reliance on Defendants' representations was therefore reasonable. *Id.* ¶ 373; *see* Pls.' Mem. at 21. According to Plaintiffs, they have paid in excess of $1 million to defendants "in reasonable reliance on the false medical documentation and false representations regarding the defendants' eligibility for reimbursement under the New York No-Fault Law. Compl. ¶¶ 375, 377(d), (e).

### d.   Unjust Enrichment

In addition to their claim for common law fraud, Plaintiffs also assert a claim for unjust enrichment against the Yehudian Defendants. Since the Court has already determined that Plaintiffs adequately alleged a claim for fraud against these defendants, the Court respectfully

37

recommends to Judge Seybert that Plaintiffs' unjust enrichment claim be dismissed on the grounds that it is duplicative of Plaintiffs' fraud claim. *See Nazarov*, 2015 WL 5774459, at \*16 (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012)) (citing *Badia*, 2015 WL 1258218, at \*3 n. 2) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *Afanasyev*, 2016 WL 1156769, at \*5.

### e.   Declaratory Relief

Plaintiffs seek a judgment, pursuant to 28 U.S.C. Section 2201 and 2202, declaring that Defendants Padova and Progressive at all relevant times were:

> (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and/or controlled by one or more non-physicians; (c) engaged in the unlawful sharing of fees derived from the provision of professional physician services; (d) engaged in the billing for health care services not actually rendered as represented, and (e) engaged in the billing for medically unnecessary treatments and tests, and thus has no standing to submit or receive assigned No-Fault benefits.

*See* Compl. ¶¶ 610, 620; *see also* Pls.' Mem. at 22.  A court may, in its discretion, grant declaratory relief where the party seeking the relief demonstrates "the existence of an actual case or controversy."  *Allstate Ins. Co. v. Williams*, No. 13-2893, 2014 WL 6900121, at \*11 (E.D.N.Y. Dec. 5, 2014) (citing 28 U.S.C. § 2201(a); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)) (considering, in the context of a motion for default judgment, whether the plaintiff established the existence of an "actual controversy where a declaratory judgment would afford specific relief"); *Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-4261, 2013 WL 764735, at \*1 (E.D.N.Y. Feb. 8, 2013) (citing 28 U.S.C. § 2201(a); *Cardinal Chem. Co.*, 508 U.S. at 113) ("A court may issue a declaratory judgment only where the moving party has established the existence of an actual case or

controversy.") (same), *report and recommendation adopted*, No. 11-4261, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).  An award of declaratory relief may be appropriate "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings."  *Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-4295, 2013 WL 5131057, at *7 (E.D.N.Y. Sept. 12, 2013) (quoting *Md. Cas. Co. v. Rosen,* 445 F.2d 1012, 1014 (2d Cir. 1971)) (citation omitted)) (internal quotation marks omitted).  Courts within this District regularly award declaratory relief "in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims."  *See e.g*., *Allstate Ins. Co. v. Williams*, No. 13-2893, 2014 WL 6900121, at *11 (E.D.N.Y. Dec. 5, 2014) (citing *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 09-2990, 2009 U.S. Dist. LEXIS 125653, at *11–12 (E.D.N.Y. Dec. 30, 2009) (collecting cases)) ("recommend[ing] that a default judgment be entered in favor of Allstate and against Targee for a declaratory judgment that Targee has no right to receive payment for any pending bills submitted to Allstate because the billed-for services were provided as part of a predetermined fraudulent treatment and billing protocol[]"); *Gov't Employees Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-3670, 2017 WL 1133282, at *9 (E.D.N.Y. Feb. 21, 2017) ("recommend[ing] that the District Court enter a declaratory judgment that Plaintiffs are not obligated to pay the outstanding fraudulent claims submitted to Plaintiffs by the corporate Defaulting Defendants") (collecting cases), *report and recommendation adopted*, No. 15-3670, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017); *Gov't Employees Ins. Co. v. Alrof*, Inc., No. 11-4028, 2013 WL 9600668, at *6 (E.D.N.Y. July 19, 2013) ("recommend[ing, in the context of a default judgment,] that [the district judge] enter a declaratory judgment that GEICO is not obligated to pay any of Alrof's pending claims[]"); *Gov't*

39

*Employees Ins. Co. v. IA V Med. Supply, Inc.*, 11-4261, 2013 WL 764735, at *7 (E.D.N.Y. Feb. 8, 2013) ("recommend[ing] that [the] Court enter a declaratory judgment that Plaintiffs are neither obligated to pay nor are liable for the outstanding claims submitted by [the defaulting] Retail Defendant Power Supply, Inc."), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013); *but see Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-4295, 2013 WL 5131057, at *7 (E.D.N.Y. Sept. 12, 2013) (citing *Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co*., 9 N.Y.3d 312, 317–18, 849 N.Y.S.2d 473, 879 N.E.2d 1291 (2007)) ("Under New York law, an assertion of defenses against payment of a no-fault insurance claim or bill must affirmatively plead compliance with the applicable mandatory time limit for responding to insurance claims.").

Here, Plaintiffs have adequately alleged the existence of an actual controversy. According to the Complaint, Defendants orchestrated a pervasive scheme pursuant to which they submitted fraudulent insurance claims to collect no-fault benefits from Plaintiffs. Moreover, Padova and Progressive continue to submit insurance claims demanding payment and continue to challenge Plaintiffs' denial of prior claims. Compl. ¶¶ 604, 614. Likewise, Padova and Progressive continue to commence litigation against Plaintiffs in an effort to collect payments. *Id*. ¶¶ 606, 616; *see Parkway Med. Care, P.C*., 2017 WL 1133282, at *9 (determining that the plaintiffs established an actual controversy where they alleged that they had paid hundreds of thousands of dollars to defendants in connection with fraudulent insurance claims, that the defaulting defendants had outstanding bills to the plaintiff, and that these pending claims are fraudulent); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 09-2990, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009) (granting declaratory relief where plaintiffs alleged that defendants implemented a "pervasive scheme, which sought, and continue[d] to seek in the pending lawsuits

40

by the [defendant] PCs, payment of No–Fault benefits for fraudulent billing submitted for medically unnecessary services, services that were never provided, or services provided by independent contractors rather than by employees of the [defendant] PCs."), *report and recommendation adopted*, No. 09-2990, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010), *aff'd*, 409 F. App'x 453 (2d Cir. 2011).  The Court finds that these allegations are sufficient to state a claim for declaratory relief.

### 3.   *Prejudice*

The final factor for the Court to consider is whether the plaintiff would be prejudiced if the motion for default judgment were to be denied.  Denying this motion would actually be prejudicial to Plaintiffs since "there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3).  If a default judgment is not granted, Plaintiffs will have no alternative legal redress to recover the losses they have sustained.  Since all three factors necessary to establish a default have been satisfied, the Court respectfully recommends to Judge Seybert that default judgment be entered against the Yehudian Defendants.

### B.   **Damages and Requested Relief**

### 1.   *RICO Damages*

Although a party's default is viewed as "a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)).  Therefore, once a party's default as to liability is established, a plaintiff still must prove damages.  *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*,

699 F.3d 230, 234 (2d Cir. 2012) (citing Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Gutman v. Klein*, No. 03-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting *Flaks*, 504 F.2d at 707) ("'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"). The only question remaining, then, is whether Plaintiffs have provided adequate support for the damages sought. *See Gutman*, 2010 WL 4975593, at *1 (citing *Bravado Int'l Group Merch. Servs.*, 655 F. Supp. 2d at 189; *Greyhound*, 973 F.2d at 158) ("burden is on the plaintiff to establish entitlement to damages") (internal quotation marks omitted), *report and recommendation adopted by* 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), *aff'd*, 515 Fed. Appx. 8 (2d Cir. 2013).

Plaintiffs request that monetary judgments be entered against the defaulting defendants as follows:

| Defendant | Counts | Actual Damages | Trebled Damages |
|---|---|---|---|
| Yehudian | VII-X (Padova and Progressive RICO enterprise and conspiracy claims) | $1,902,830.03 | $5,708,490.09 |
| Padova | XV (common law fraud) and XVI (unjust enrichment) | $1,442,469.15 | N/A |
| Progressive | XV (common law fraud) and XVI (unjust enrichment) | $460,360.88 | N/A |

Pls.' Mem. at 29; Bruno Decl. ¶¶ 67, 75, 76; Plaintiffs' Response to Report and

Recommendation ("Response to R&R) [DE 88], at 4.  In support of their request, Plaintiffs

provided the Court with extensive .pdf format spreadsheets of the payments made to Padova and

Progressive.  *See* Table of Payments to Padova [DE 84-4], annexed as Ex. 2 to Bruno Decl.; *see*

*also* Table of Payments to Progressive [DE 84-5], annexed as Ex. 3 to Bruno Decl.  The

spreadsheets were created by Michael Bruno, a Senior Special Investigations Unit Field Analyst

at Allstate who conducted a search of Allstate's computerized business records.  Bruno Decl. ¶

69.  According to Bruno, "[t]he search was conducted by examining all payments made by

Allstate to the tax identification number ('TIN') used by Padova and Progressive when

submitting invoices in connection with claims involved in Allstate's Complaint." *Id*.  Once

Allstate authorizes a payment, "the designated information is entered into Allstate's computer

database, which causes a check to be generated, issued, and catalogued according to the TIN of

the payee." *Id*. ¶ 70.

Upon request from the Court, Plaintiffs supplemented their submission with the same

spreadsheets but in the format of an excel spreadsheet on a CD so that the Court could confirm

the accuracy of Plaintiff's calculations.  *See* DE 91.  The Court has reviewed the excel

spreadsheets and tabulated the payments made to Padova and Progressive, and finds that they are

consistent with the figures set forth by Plaintiffs in the chart above.  Courts have found that

documentation similar to that which has been submitted by Plaintiffs adequately supports a

damages award, rendering a hearing on damages unnecessary.  *Nazarov*, 2015 WL 5774459, at

*17 (citing *Williams*, 2014 WL 6900121, at *9; *Aminov*, 2014 WL 527834, at *7; *Howell*, 2013

WL 5447152, at *7; *Smirnov*, 2013 WL 5407224, at *15).

43

Plaintiffs argue that they are entitled to "a money judgment against Yehudian totaling $5,708,490.09, representing three times the actual amounts that Allstate paid to Padova and Progressive in connection with assigned No-Fault benefit claims." Pls.' Mem., at 24-25.  With regard to treble damages, 18 U.S.C. Section 1964(c) provides as follows:

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therfor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(c).  "Courts have found that an award of treble damages is appropriate in No–Fault billing cases involving RICO fraud claims, even in the context of a default."  *Afanasyev*, 2016 WL 1156769, at *12 (citing *Nazarov*, 2015 WL 5774459, at *19; *Aminov*, 2014 WL 527834, at *8; *Howell*, 2013 WL 5447152, at *7); *Gov't Employees Ins. Co. v. Green*, No. 10-2671, 2012 WL 10874196, at *10 (E.D.N.Y. Nov. 7, 2012) (citing *Government Emps. Ins. Co. v. Damien*, No. 10-5409, 2011 WL 5976071 (Nov. 3, 2011 E.D.N.Y.), *report and recommendation adopted*, No. 10-5409, 2011 WL 60000571 (Nov. 29, 2011 E.D.N.Y.); *D'Orange v. Feely*, 894 F. Supp. 159 (S.D.N.Y.1995), *aff'd*, 101 F.3d 1393 (2d Cir.1996)), *report and recommendation adopted*, No. 10-2671, 2014 WL 2169642 (E.D.N.Y. May 23, 2014).  Here, Plaintiffs have adequately alleged that Defendants orchestrated a pervasive healthcare fraud billing scheme in violation of RICO.  The Court therefore recommends to Judge Seybert that Plaintiffs be awarded treble damages for the Defendants' RICO violations.

### 2.    *Common Law Damages*

Plaintiffs seek the entry of a judgment against Defendant Padova in the amount of $1,442,469.15, and against Defendant Progressive in the amount of $460,360.88, in connection

with their common-law fraud claims against these Defendants.  New York applies the "out-of-pocket" rule when calculating damages as a result of common law fraud.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir.1994) (citing *Disher v. Information Resources, Inc.*, 691 F. Supp. 75, 79 (N.D. Ill. 1988), *aff'd*, 873 F.2d 136 (7th Cir. 1989)); *Nazarov*, 2015 WL 5774459, at *20 (citing *Matana v. Merkin*, 989 F. Supp. 2d 313, 321 (S.D.N.Y. 2013)), *reconsideration denied in relevant part*, No. 13-1534, 2014 WL 426857 (S.D.N.Y. Feb. 4, 2014). Plaintiffs have adequately alleged that Defendants Padova and Progressive committed common law fraud in connection with the fraudulent healthcare billing scheme.  Moreover, Bruno's Declaration and documentation support the requested compensatory damages.  The Court therefore recommends that judgment be entered against Padova in the amount of $1,442,469.15, and against Progressive in the amount of $460,360.88.

### 3.   Joint and Several Liability

With respect to the RICO violations, Plaintiffs argue that Defendant Yehudian should be held jointly and severally liable for the total payments that they made to Padova and Progressive.  Pls.' Mot. at 25; Bruno Decl. ¶ 72.  Courts in this district "routinely find defendants jointly and severally liable in relation to civil RICO claims."  *Nazarov*, 2015 WL 5774459, at *17 (citing *Scheer*, 2014 WL 4966150, at *11; *Aminov*, 2014 WL 527834, at *8; *Allstate Ins. Co. v. Kumar,* No. 10-8166, 2013 WL 2395748, at *3 (S.D.N.Y. June 3, 2013); *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013)); *Gov't Employees Ins. Co. v. Green*, No. 10-2671, 2012 WL 10874196, at *10 (E.D.N.Y. Nov. 7, 2012) (quoting *United States v. Philip Morris USA*, 316 F.Supp.2d 19, 27 (D.D.C. 2004)) ("[e]very circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants

participate in the enterprise responsible for the RICO violations."), *report and recommendation adopted*, No. 10-2671, 2014 WL 2169642 (E.D.N.Y. May 23, 2014).  Here, Plaintiffs adequately allege that Defendant Yehudian contributed to the healthcare fraud billing scheme which resulted in a single injury with respect to Padova and Progressive — the payment of no-fault benefits to which Padova and Progressive would not otherwise be entitled.  *Nazarov*, 2015 WL 5774459, at *17.  Further, the Court notes that joint and several liability is not precluded when the injury is based on different theories of liability, as is the case here.  *Badia*, 2015 WL 1258218, at *25 n.18 (citing Damages in Tort Actions, § 49.01[1]; *LNC Inv., Inc. v. First Fidelity Bank, Nat. Ass'n*, 935 F. Supp. 1333, 1346 (S.D.N.Y.1996); *Lombardo v. Walsh*, 168 A.D.2d 989, 990, 564 N.Y.S.2d 932 (4th Dep't 1990); *see Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc.*, 109 A.D.2d 449, 454, 492 N.Y.S.2d 371 (1st Dept. 1995) ("The right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries. This is so regardless of whether the parties are joint tort-feasors, or whether they are liable under different theories, so long as their wrongdoing contributes to the damage or injury involved.").

The Court therefore respectfully recommends that Defendant Yehudian be jointly and severally liable for the payments Plaintiffs made to Padova ($1,442,469.15) and Progressive ($460,360.88).  *See David Sanni-Thomas, D.O.*, 2015 WL 5692875, at *11 (determining that because the same damages were sought in each count, "separate awards under RICO and state law would accordingly be duplicative"); *Gov't Employees Ins. Co. v. Esses*, No. 12-4424, 2013 WL 5972481, at *10 n.3 (E.D.N.Y. Nov. 5, 2013) ("Since the award of damages under RICO wholly compensates the plaintiffs, and the award having been trebled, the plaintiffs are not

entitled to separate awards of damages on the claims for common law fraud and unjust enrichment."). The Court further recommends that Defendant Yehudian, alone, be held liable for the trebled RICO damages less the actual damages for which he is jointly and severally liable ($3,805,660.06).

### 4.    Set-Off

Plaintiffs argue that since the Yehudian Defendants are in default, they "may not invoke the benefits of the set-off rule." Pls.' Mem. at 26. Under the set-off rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co*., 878 F.2d 596, 600 (2d Cir. 1989) (citing *Hess Oil Virgin Islands Corp. v. UOP, Inc*., 861 F.2d 1197, 1208 (10th Cir. 1988); *U.S. Industries, Inc. v. Touche Ross & Co*., 854 F.2d 1223, 1236 (10th Cir. 1988); Restatement (Second) of Torts § 885(3), comments e & f)); *see Allstate Ins. Co. v. Polack*, No. 8-0565, 2012 WL 4489282, at *7 (E.D.N.Y. Sept. 12, 2012) (quoting *Chubb & Son*, 2010 U.S. Dist. LEXIS 141842, at *32, 2010 WL 5978913 (E.D.N.Y. ), *report and recommendation adopted*, No. 08-565, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012).

Courts apply federal common law to determine whether the set-off rule is applicable to a plaintiff's claim for RICO damages. *David Sanni-Thomas, D.O*., 2015 WL 5692875, at *11 (quoting *Chloe v. Zarafshan*, No. 6-3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009)) ("[F]ederal common law governs whether a defendant in an action brought under federal law is 'entitled to a credit against judgment for the settlement by another party to the dispute.'") (internal quotation marks omitted). There appears to be a split of authority on the issue among

courts within the Second Circuit.  *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc*., No. 07-2568, 2012 WL 1414872, at *8 (E.D.N.Y. Jan. 20, 2012) (quoting *Chloe*, 2009 WL 2956827, at *7; *RLI Ins. Co. v. King Sha Grp*., 598 F.Supp.2d 438, 446–47 (S.D.N.Y. 2009)) ("there appears to be a split of authority over whether a defendant in default is entitled to any set-off"); *compare Lukaszuk v. Sudeen*, No. 02-5143, 2007 WL 4699018, at *8 (E.D.N.Y. Nov. 27, 2007) (quoting *Singer*, 878 F.2d at 600) (citing *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992); *Kumar*, No., 2013 WL 2395748, at *3 (citing *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 4-4631, 2007 WL 4326920, *9 (E.D.N.Y. 2007) ("Defaulting defendants may benefit from the set-off rule."); *with David Sanni-Thomas, D.O*., 2015 WL 5692875, at *12; *Gov't Employees Ins. Co. v. Simakovsky*, No. 14-3775, 2015 WL 5821407, at *13 (E.D.N.Y. Oct. 5, 2015); *Johnson v. Dumphy*, No. 09-2758, 2011 WL 6101957, at *5 (E.D.N.Y. Nov. 14, 2011), *report and recommendation adopted*, No. 09-2758, 2011 WL 6111236 (E.D.N.Y. Dec. 7, 2011); *Chloe*, 2009 WL 2956827, at *7.

   "Most courts in the Second Circuit however have held that a defendant in default 'may not invoke the benefits of the set-off rule.'"  *Simakovsky*, 2015 WL 5821407, at *13 (quoting *Chloe*, 2009 WL 2956827, at *7) (citing *State Farm Mutual Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 483 (E.D.N.Y.2013); *RLI Ins. Co. v. King Sha Grp*., 598 F. Supp. 2d 438, 446–47 (S.D.N.Y.2009); *Godfrey v. Soto*, No. 6-428, 2007 WL 2693652, at *7 (E.D.N.Y. Sept. 10, 2007)); *Sole v. Knoedler Gallery, LLC*, No. 12-2313, 2016 WL 5417880, at *10 (S.D.N.Y. July 21, 2016) ("[m]ost courts in the Second Circuit ... have held that a defendant in default 'may not invoke the benefits of the set-off rule.'") (internal quotation marks omitted) (collecting cases), *report and recommendation adopted*, No. 12-2313, 2016 WL 5468298 (S.D.N.Y. Sept. 28, 2016).  These courts have reasoned that it is the defendant's burden to demonstrate the extent to

48

which the recovery against it "would be duplicative of the plaintiff's recovery from settling

defendants," and by virtue of the defendant's failure to participate in the litigation, it cannot

satisfy this burden.  *See Grafman*, 968 F. Supp. 2d at 483 (quoting *RLI Insurance Co*., 598 F.

Supp. 2d at 447).

Here, the Court declines to apply a set-off to Plaintiffs' RICO damages.  A review of

cases in which courts have applied the set-off rule reveals that in many of them, the plaintiff

agreed to reduce its recovery.  *See e.g*., *Kumar*, 2013 WL 2395748, at *4 ("Allstate has credited

settlement amounts to some Defendants within these groups already.  In one instance, Allstate

subtracted Defendant Kumar's settlement payment of $10,000 from the trebled damages….");

*Nazarov*, 2015 WL 5774459, at *18 ("The setoffs were included in Plaintiffs' final

calculations."); *Chubb & Son Inc. v. Kelleher*, No. 92-4484, 2010 WL 5978913, at *8 (E.D.N.Y.

Oct. 22, 2010), *report and recommendation adopted*, No. 92-4484, 2011 WL 839553 (E.D.N.Y.

Mar. 7, 2011) ("Plaintiffs state that, if this court finds Zerring liable, they will prepare and

submit calculations of the amount of the judgment to be entered against Zerring after crediting

offsets for prior recoveries for the same claims."); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No.

04-4631, 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) ("At the hearing and in its motion

for a default judgment, plaintiff requested a total award of $2,401,273.78, which was calculated

by trebling the total amount owed by all defendants and then deducting the amount received

from the other defendants in settlement.").  Plaintiffs in the instant case have offered no such

consent.

The Court acknowledges that declining to apply a set-off may potentially result in

Plaintiffs being overcompensated for the injuries they have sustained.  Courts in the Second

Circuit, however, routinely mitigate this concern by acknowledging that "[t]he law contains no

rigid rule against overcompensation" and that "[s]everal doctrines ... recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Simakovsky*, 2015 WL 5821407, at *13 (quoting *McDermott v. AmClyde*, 511 U.S. 202, 208, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994)).  Consequently, the Court respectfully recommends to Judge Seybert that no set-off be applied to Plaintiffs' RICO damages.

The Court also concludes that a set-off should likewise not be applied to Plaintiffs' common law fraud damages.  Under New York law, common law fraud claims are subject to New York General Obligations Law Section 15-108(a).  *Lukaszuk*, 2007 WL 4699018, at *8 (citing *SCS Comms., Inc. v. Herrick Co., Inc*., 360 F.3d 329, 346 (2d Cir. 2004); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*., No. 93-6876, 2000 WL 1364272, at *1-*2 (S.D.N.Y. 2000).  Pursuant to N.Y. Gen. Oblig. Law Section 15-108(a), "a non-settling defendant is entitled to a reduction that is the greater of (1) the settling defendant's equitable share of the damages, (2) the stipulated amount of the settlement, or (3) the amount actually paid by the settling defendant." *Id*. (*Kelleher*, 2006 WL 2728636, at *5; *Whalen v. Kawasaki Motors Corp*., 92 N.Y.2d 288, 292, 680 N.Y.S.2d 435, 703 N.E.2d 246 (1998)).  The set-off rule, however, is an affirmative defense, which means that it is waived if the defendant fails to invoke it. *Id*.  Here, since Defendants are in default and there is no Answer before the Court, Defendants have failed to assert set-off as an affirmative defense.  Based on these factors, the Court respectfully recommends that no set-off be applied to the Yehudian Defendants on the common law fraud damages.

### 5.    *Other Relief*

The Court notes that Plaintiffs request other relief, including injunctive relief, interest, costs and attorney's fees in connection with their RICO claims against Defendant Yehudian, and costs in defending no-fault collection suits filed by the Defendants seeking payment of fraudulent invoices in connection with Plaintiffs' fraud claims.  Compl. at 98-101.  Plaintiffs' motion for default judgment, however, does not seek such relief.  Moreover, Plaintiffs confirmed that they are "only seeking a judgment reflecting the actual damages caused by the Yehudian Defendants."  Response to R&R at 3.  The Court therefore will not address any further relief.  *See Allstate Ins. Co. v. Mirvis*, No. 08-4405, 2015 WL 1539671, at *1n.1 (E.D.N.Y. Mar. 31, 2015), *appeal dismissed* (July 20, 2015).

### C.    **Fed. R. Civ. P. 54(b)**

In addition to the entry of default judgment pursuant to Fed. R. Civ. P. 54(b), Plaintiffs seek entry of final judgment pursuant to Fed. R. Civ. P. 54(b).  Pls.' Mem. at 1, 28.  Rule 54(b) permits a court to enter judgment against "one or more, but fewer than all, claims or parties."  Fed. R. Civ. P. 54(b).  A court may do so, however, "only if the court expressly determines that there is no just reason for delay."  *Id*.  In cases where final judgment is not entered, and an order adjudicates less than all claims, that judgment may be "revised at any time before the entry of judgment adjudicating all the claims."  *Id*.  Since the only remaining Defendants are Dr. Yehudian, Padova and Progressive, and the instant Report and Recommendation resolves all remaining claims against them, the Court is at a loss to ascertain why Plaintiffs are invoking Rule 54(b).  In any event, entry of final judgment against Defendants Yehudian, Padova and Progressive is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Plaintiffs' motion for default judgment under Fed. R. Civ. P. 55(b)(2) and motion for final judgment under Fed. R. Civ. P. 54(b), be GRANTED. To that end, the Court recommends that judgment be entered as follows:

- against Defendant Padova in the amount of $1,442,469.15;
- against Defendant Progressive in the amount of $460,360.88;
- holding Defendant Yehudian jointly and severally liable for the judgments against Defendants Padova and Progressive ($1,902,830.03);
- holding Defendant Yehudian alone liable for trebled damages on the RICO claims ($5,708,490.09), less the actual damages for which he is jointly and severally liable ($1,902,830.03), totaling $3,805,660.06; and
- precluding any set-off against the damages award.

The Court further recommends that Plaintiffs' claim for unjust enrichment be DISMISSED as duplicative of Plaintiffs' fraud claim and that Plaintiffs' request for declaratory relief be GRANTED.[3]

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the

[3] The Court notes that Plaintiffs have failed to append to their motion for default judgment a copy of the Complaint and a "proposed form of default judgment" in accordance with Local Civil Rule 55.2(b). However, district courts also have broad discretion to excuse or overlook a party's failure to comply with the local rules" and the Court recommends to Judge Seybert that the Court do so here. *See Assets Recovery 23, LLC v. Gasper*, No. 15CV5049, 2017 WL 3610568, at *4 (E.D.N.Y. July 25, 2017) (citing *Holtz v. Rockefeller & Co*., 258 F.3d 62, 73 (2d Cir. 2001); *Cea v. Access 23 TV*, No. 11 CV 3791, 2015 WL 5474070, at *3 (S.D.N.Y. Sept. 15, 2015), *report and recommendation adopted*, No. 15CV5049RJDCLP, 2017 WL 3610517 (E.D.N.Y. Aug. 21, 2017)

Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *see also Johnson v. Woods*, 426 F. App'x 10, 11 (2d Cir. 2011) (citing *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996) (citing *McCarthy v. Manson*, 714 F.2d 234, 237 n.2 (2d Cir. 1983)).

**Counsel for Plaintiffs is directed to serve a copy of this Report and Recommendation on Defendants Yehudian, Padova and Progressive forthwith by overnight mail and first-class mail and to file proof of such service on ECF**.


Dated: Central Islip, New York
      February 15, 2018

                                           **SO ORDERED.**

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge